**In re UNR INDUSTRIES, INC., Unarco Industries, Inc., UNR Inc., UNR–Rohn, Inc., (Alabama), UNR–Rohn, Inc., (Indiana), Jobal Tube Co., Inc., UNR Products, Inc., and Folding Carrier Corporation, Debtors.**

**Bankruptcy Nos. 82 B 9841–82 B 9845, 82 B 9847, 82 B 9849 and 82 B 9851.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 9, 1987.

---

Malcolm M. Gaynor, Richard M. Bendix, Jr., Schwartz, Cooper, Kolb, & Gaynor Chartered, Chicago, Ill., for debtors.

Kevin M. Forde, Mary Anne Mason, Kevin M. Forde Ltd., Chicago, Ill., for Legal Representatives for Unknown Putative Asbestos-Related Claimants.

Scott Michael, Chicago, Ill., U.S. trustee.

J. William Cuncannan, DeFrees & Fiske, Chicago, Ill., for Official Creditors Committee of Asbestos-Related Plaintiffs.

## MEMORANDUM OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the Court on the debtors' motion to direct the Legal Representative to represent CHARLES L. ALBAN and THOMAS E. ANDERSON.

Both Charles L. Alban and Thomas E. Anderson claim to have been exposed to asbestos manufactured by the debtors. However, neither has yet manifested any signs of asbestos-related disease. Nevertheless, Mr. Alban and Mr. Anderson have each filed a proof of claim in these Chapter 11 cases based on possible injuries they might suffer in the future should they develop an asbestos-related disease. Their claims are the first of such filed by so-called putative claimants in these cases.[1] The debtors have filed objections to the claims filed by Alban and Anderson. Both men are without counsel at this time. It appears that neither has the financial resources necessary to obtain adequate legal representation. Kevin Forde ["Legal Representative"] has previously been appointed by this Court to represent *unknown* putative asbestos-related claimants. The debtors have asked this Court to order the Legal Representative to represent Mr. Alban and Mr. Anderson, the two known putative asbestos-related claimants, to assist them in litigating their claims against these estates and the debtors' objections to those claims. The Legal Representative, the Official Creditors Committee of Asbestos-Related Plaintiffs, and the United States Trustee have each filed briefs in opposition to debtors' request.

## I. BACKGROUND

The debtors are a group of affiliated corporations which can collectively be referred to as UNR [or "the debtor"].[2] In

---

1. The term "putative claimant" in this opinion includes all those people who have been exposed to asbestos but have not been diagnosed as having an asbestos-related disease. It is to be distinguished from the term "future claimant" which will be used in this opinion to refer to those persons who have been exposed to UNR's asbestos, have not yet gotten sick, but who, in the future, will be diagnosed as having an asbestos-related disease as a result of that exposure. *Cf. In re Johns-Manville Corp.,* 36 B.R. 743, 744–45 (Bankr.S.D.N.Y.1984) *aff'd,* 52 B.R. 940 (S.D. N.Y.1985) where the court defined the term "future claimants" as "all persons and entities who, on or before August 26, 1982, came into contact with asbestos or asbestos-containing products mined, fabricated, manufactured, supplied or sold by Manville and who have not yet filed claims against Manville for personal injuries or property damage." Also, *cf. In re Amatex Corporation,* 755 F.2d 1034, 1035 (3rd Cir. 1985) where the court defined the term "future claimants" as those "individuals who have been exposed to asbestos but have not yet manifested symptoms of asbestos-related disease." In each of these definitions, there is an assumption that the members of the "future claimant" class will in fact develop an asbestos-related disease. Yet it is clear that not every person who was exposed to UNR's asbestos will actually develop an asbestos-related disease. The way the terms "putative claimants" and "future claimants" are defined for purposes of this opinion, all future claimants are at present putative claimants but not all putative claimants are future claimants. As explained later in this opinion, that distinction is crucial to the resolution of the issue now before this Court.

2. Although these estates have not been substantively consolidated, for purposes of this motion, all of the debtors have joined in a single set of pleadings. Therefore, the Court will view the debtors as a single entity for the purpose of resolving the instant motion. This approach should not be viewed as in any way suggesting that these cases be substantively consolidated.

the 1930's, UNR began the manufacture and sale of products containing asbestos fiber. Over the years exposure to these products has come to be implicated as a cause of several forms of serious and debilitating asbestos-related diseases. Literally thousands of lawsuits were brought against UNR by or on behalf of shipyard workers and others who claimed to have inhaled fibers from asbestos-related products manufactured by UNR over a period covering several decades. Faced with the expense of defending itself against 17,000 asbestos-related tort and wrongful death suits, and with virtually unlimited potential liability from actual claimants and future claimants, UNR initiated proceedings under Chapter 11 of the Bankruptcy Code in this Court on July 29, 1982.

UNR stopped manufacturing asbestos in the early 1970's. Nevertheless, the asbestos UNR manufactured remained (and remains) in shipyards and other places where people have been exposed to its airborne fibers for years. That exposure continues today and will continue for an indefinite period of time to come. It is not unusual for an asbestos-related disease to remain latent for many years after a victim's original exposure to asbestos fiber before manifesting itself. In fact, a large number of people who were exposed to UNR's asbestos and who are not now sick as a result, will become sick with asbestos-related disease at some time in the future.[3] The results of a study commissioned by the debtor indicate that UNR can expect to be sued by an additional 30,000 to 120,000 new asbestos victims as their disease manifests itself and is diagnosed. These people, the "future claimants", are in addition to the thousands of people who claim to have already become sick as a result of being exposed to the debtor's asbestos.[4] Of course there are also thousands of people who have been exposed to UNR's asbestos who never will get sick as a result.[5]

## II. THE UNDERLYING DISPUTE

It would be disingenuous of the Court not to recognize what this dispute is all about. The debtor wants to resolve the question of whether the putative claimants and/or future claimants are in fact "creditors" for Bankruptcy Code and Chapter 11 plan purposes. It would like this question to be resolved as soon as possible so it can formulate a plan of reorganization. It would prefer that both groups be determined to be "creditors" so that they can be included in that plan and UNR can have these potential claims discharged by its plan. Therefore, UNR would like to challenge the Alban and Anderson claims and lose. The Legal Representative, on the other hand, would prefer that the status of at least the future claimants remain unresolved in order to facilitate negotiations on the plan. Therefore, he is not in such a hurry to leap to the defense of Messrs. Alban and Anderson.

Arguably, only "creditors" can be bound by a plan and be included within the discharge the debtor receives on confirmation of a Chapter 11 plan. 11 U.S.C. § 1141(a), (d); *Board of County Commissioners of Saline County, Kansas v. Coleman American Properties, Inc. (In re American Properties, Inc.)*, 30 B.R. 239, 246 (Bankr. Kan.1983). Persons who are not creditors (or equity owners of the debtor) probably

3. It is also likely that there are a smaller number of people who have not yet been exposed to UNR's asbestos who will be exposed to it in the future and who will become sick as a result. Fortunately modern methods of environmental education and control should reduce the number of such victims to a minimum. This opinion draws no distinction between those people exposed before the debtor's Chapter 11 petition and those whose injuries will result from post-petition exposure.

4. The Official Creditors Committee of Asbestos-Related Plaintiffs represents only those individuals who have been diagnosed as having an asbestos-related disease.

5. It is worth noting that Messrs. Alban and Anderson, who have been exposed but have not gotten sick as a result, but may get sick, fit into none of these groups. Actually to be more accurate, it is not clear what group Alban and Anderson fit into. If either of them gets sick in the future, he will become a "future claimant." Hopefully, however, both will remain healthy in terms of asbestosis for the rest of their lives and will be among those exposed to UNR asbestos, but who never get sick as a result.

cannot be bound by the plan. *Id. See also* U.S. CONST. amend. V.[6]

For a person to be a "creditor" in a bankruptcy case, he/she must have a "claim" against the debtor.[7] 11 U.S.C. § 101(9). That claim must have arisen (or be deemed to arise) at the time of or prior to the filing of a debtor's petition or the order for relief. 11 U.S.C. § 101(9). The term "claim" is specifically defined by the Bankruptcy Code.[8] 11 U.S.C. § 101(4). The simple question is whether either the putative claimants or future claimants have claims against UNR.

■ Regardless of whether persons who are neither creditors nor owners can be bound by a plan, the Bankruptcy Code does make provision for such persons to participate in a Chapter 11 case where necessary to protect their rights. Under section 1109(b), "a party in interest ... may raise and may appear and be heard on any issue" in a Chapter 11 case.[9] 11 U.S.C. § 1109(b). The gist of section 1109 is clear. The right

to participate in Chapter 11 cases is not limited to creditors and owners. Persons who are not creditors but nevertheless have demonstrated a sufficient stake in the outcome of the case may be deemed to be parties in interest and be entitled to be heard.[10] *In re Amatex Corporation,* 755 F.2d 1034, 1042 (3rd Cir.1985). However, what is unclear is the extent to which such noncreditors can be bound by the case in general and the plan in particular.

■ There is no doubt that those exposed before the petition and individuals who have been diagnosed at any time as having an asbestos-related disease are creditors for Bankruptcy Code purposes. In this case, this group is represented by the Official Creditors Committee of Asbestos-Related Plaintiffs. Asbestos disease victims are creditors of these estates because they possess claims which are recognized by the Bankruptcy Code. 11 U.S.C. § 101(4). Like any other creditor group,

---

**6.** However, it should be noted that section 1142(b) authorizes the court to direct "any other necessary party" to perform acts which are necessary to effectuate a plan. 11 U.S.C. § 1142(b), *See* Bankruptcy Rule 3020(d), *In re 12th & N Joint Venture,* 63 B.R. 36, 38 (Bankr.D.C.1986).

**7.** Section 101(9)(A) provides:
(9) "creditor" means—
(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; 11 U.S.C. § 101(9)(A)
Under section 101(14) "entity" includes person, estate, trust, governmental unit, and United States Trustee; 11 U.S.C. § 101(14).

**8.** Section 101(4) provides:
(4) "claim" means
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

**9.** Section 1109. Right to be heard
(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trust-

ee, may raise and may appear and be heard on any issue in a case under this chapter [11 U.S.C.S. §§ 1101 et seq.].
The phrase "party in interest" is not defined by the Bankruptcy Code. Since the word "including" is not a limiting term, 11 U.S.C. § 102(3), the examples of parties in interest listed in section 1109(b) are not exhaustive. Further, courts have held that section 1109(b) must be interpreted broadly to allow persons affected by a Chapter 11 case to appear and be heard. *See In re Amatex,* 755 F.2d at 1042.

**10.** It is clear that putative claimants have a sufficient interest in an asbestos-related Chapter 11 case to warrant their participation. The Seventh Circuit has observed in this very case that the bankruptcy court's equitable powers may be broad enough to ensure that provisions are made for putative claimants in any plan of reorganization it might eventually approve. *In re UNR Industries, Inc.,* 725 F.2d 1111, 1119 (7th Cir.1984). The Third Circuit has held putative claimants to be parties in interest who are entitled to have a voice in these cases in order to protect their interests. *In re Amatex,* 755 F.2d at 1042–43. Bankruptcy courts administering asbestos-related Chapter 11 cases have been fairly consistent in appointing legal representatives to represent putative claimants. *In re Amatex,* 755 F.2d 1034; *In re Forty-Eight Insulations, Inc.,* 58 B.R. 476 (Bankr.N.D.Ill.1986); *In re Johns-Manville Corp.,* 36 B.R. 743 (Bankr.S.D.N.Y.1984), *aff'd,* 52 B.R. 940 (S.D.N.Y.1985); *In re UNR Industries, Inc.,* 46 B.R. 671 (N.D.Ill.1985).

asbestos disease victims have certain rights which are afforded certain treatment by the Bankruptcy Code for purposes of this case. Asbestos disease victims must file their claims prior to any bar date set by the court. Bankruptcy Rule 3003(c). Asbestos disease victims can vote on a plan of reorganization. 11 U.S.C. §§ 1124, 1126.[11] Their claims will be discharged upon the entry of an order confirming UNR's Chapter 11 plan. 11 U.S.C. § 1141(d)(1)(A). Their claims will also be subject to the post-confirmation injunction, 11 U.S.C. § 524(a)(2), which injunction would prevent the filing of lawsuits by these asbestos disease victims against the newly reorganized UNR. Assuming that a plan is confirmed by the Court, it will be binding on all known victims who have been diagnosed as having the disease by the time of confirmation regardless of whether they vote for the plan and regardless of whether they file proofs of claim.

In contrast, the status of both putative claimants and future claimants in a Chapter 11 proceeding is uncertain. Again, putative claimants are those people who have been exposed to UNR's asbestos but have not been diagnosed as having any asbestos-related disease. Future claimants are those putative claimants who will, in fact, develop an asbestos-related disease at some time in the future as a result of that exposure. Whether future claimants are creditors as defined by the Bankruptcy Code is a question which has not been resolved by the Seventh Circuit, or any other circuit court.[12]

The term "claim" as defined by the Bankruptcy Code may or may not include the claims of future claimants. 11 U.S.C. § 101(4). Arguably, future claimants may not have a recognizable claim and do not become creditors for Bankruptcy Code purposes until they get sick. Under this scenario, unless future claimants become ill prior to the confirmation of UNR's plan, they will not and cannot be treated as creditors by that plan. If future claimants are not creditors, future claimants arguably are not subject to any bar date set by the Bankruptcy Court, Bankruptcy Rule 3003(c)(3); future claimants will not be able to vote on a plan of reorganization, 11 U.S.C. §§ 1124, 1126; their claims will not be discharged by the order of confirmation, 11 U.S.C. § 1141(d)(1)(A); and most importantly, their claims will not be subject to the post-confirmation injunction 11 U.S.C. § 524(a)(2), thus allowing them to sue the reorganized debtor and this would frustrate the primary purpose behind the debtor's resort to Chapter 11.

On February 28, 1985, the Bankruptcy Court entered an order approving UNR's Application for the "Appointment of a Legal Representative for Unknown Putative Asbestos-Related Claimants." On March 28, 1985, Kevin M. Forde was appointed as the Legal Representative. Mr. Forde's duties and responsibilities were described by Judge Toles in his Order of February 28, 1985.

> The primary task of this Legal Representative will be to advise putative asbestos disease victims of the pendancy of and their interest in these bankruptcy proceedings. The Legal Representative may also be heard with reference to any plan or plans of reorganization proposed by Debtors or other interested parties, and may also be heard respecting any motion to convert filed by or against the above Debtors. The Legal Representative shall seek leave of Court prior to becoming involved in any other litigation

---

**11.** This assumes their claims are "impaired", i.e. negatively affected by the plan. If their claims are unimpaired, they will be deemed to have accepted the plan without voting on it. *See* 11 U.S.C. § 1126(f). It is unimaginable that UNR can avoid impairing the asbestos victims' claims in its ultimate plan of reorganization.

**12.** *But see, Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936 (3rd Cir.1985) *cert. denied* —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152, (1985) where it was decided under Section 77 of the Bankruptcy Act, 11 U.S.C. § 205 (Repealed) and under the Federal Employee Liability Act, 45 U.S.C. § 51 et seq., that a plaintiff who had been exposed to asbestos prior to confirmation, but who had not manifested any asbestos-related diseases until after confirmation, did not have a recognizable claim under the Bankruptcy Act, which was discharged upon the confirmation of the plan.

within this cause. Within the restrictions noted above, the Legal Representative shall exercise the powers and responsibilities of an official creditors' committee as set forth in Section 1103 of the Bankruptcy Code. 11 U.S.C. § 1103.

*In re UNR*, 46 B.R. at 675, 676.

Since his appointment, Mr. Forde has become the voice of the future claimants on various issues in this Court and in the appellate courts. In this regard, Mr. Forde has vigorously opposed the setting of a bar date for the filing of proofs of claim. Although the group he represents arguably might not be affected by such a bar date since they may not be creditors, Mr. Forde also recognizes that it is conceivable that the claims of his constituency could be effectively terminated without compensation by a bar date if it is ultimately determined that they are creditors. Mr. Forde's position quite properly appears to be that a determination of the legal status of the future claimants in this case should precede the fixing of any bar date. This is not to say that Mr. Forde has in any way sought to hinder the progress of this case. To the contrary, he has sought to resolve the case and the thorny question of the rights and status of the future claimants by negotiation rather than by litigation. Thus, he has been actively engaged in negotiating a plan of reorganization with UNR, the Asbestos Plaintiffs' Committee, and the Unsecured Creditors' Committee. Although he does not represent any particular person, Mr. Forde wields a great deal of power.[13] It is highly unlikely that the other parties would seek the confirmation of a plan which did not meet the approval of Mr. Forde.

It appears likely that eventually, a plan of reorganization will be confirmed and the new UNR shall emerge. The plan will most likely contain some sort of trust vehicle which will pay a portion of the claims of future claimants as they become ill in the future. Again, all this can take place, according to Mr. Forde and the United States Trustee, without ever resolving the question as to whether future claimants are creditors. Indeed, Mr. Forde does not want to take a position on this issue, nor does he want to be placed in a set of circumstances which would force him to take a position.

UNR, on the other hand, wants this question resolved. In fact, UNR has attempted to treat future claimants as creditors as evidenced by their efforts to send out a notice to them which sets a bar date for the filing of their claims.[14] UNR would like the claims of future claimants to be treated in this case like those of any other creditor group, i.e. to be discharged and to be subject to the post-confirmation injunction. 11 U.S.C. §§ 1144(d)(1)(A), 524(a)(2). UNR shares the same vision of Mr. Forde regarding the creation of a trust vehicle which would compensate future claimants as they become ill in the future. However, under UNR's vision, the new UNR would emerge with all the protections the Bankruptcy Code affords reorganized debtors. If it could obtain a final determination that the future claimants are in fact creditors, the plan would be binding on them. Absent such a determination, the ability of the Court to confirm a plan which would legal-

---

**13.** Commenting on the role played by the Legal Representative in the Manville reorganization the court stated:

The placement of this representation at the bargaining table has proven to be a critical element in the development of a broad approval of the plan presently under consideration ... [and his appointment] marked a significant change in the style and progress of negotiations in the Manville reorganization. *Manville Corporation v. The Equity Security Holders Committee (In re Johns-Manville Corporation)*, 66 B.R. 517, 527–28 (Bankr.S.D.N.Y. 1986). The Legal Representative in Manville was apparantly the chief architect and catalyst

behind the plan which was eventually confirmed in that case. *In re Johns-Manville*, 66 B.R. 517, and *see* order of confirmation *In re Johns-Manville Corp.*, 68 B.R. 618, 3 Bankr.L. Rep. (CCH) § 71,531 (Bankr.S.D.N.Y.1986)

**14.** This notice and bar date order was entered by the bankruptcy court on August 12, 1986 upon UNR's motion, and it is now on appeal before the district court, and its effects have been stayed pending appeal. The appeal of this order was brought by the Legal Representative, the Asbestos Plaintiffs' Committee and the Unsecured Creditors' Committee.

ly bind the future claimants is far from clear.[15]

UNR's views regarding the status of future claimants are understandable. However, there is no controlling precedent that UNR can point to which mandates the result it seeks. Whether future claimants are creditors remains an open question. The Seventh Circuit has observed, in dicta, that the issue of whether putative claimants have claims which come within the meaning of section 101(4) of the Bankruptcy Code can best be resolved after one of these claimants comes forward and files a proof of claim which is subsequently allowed or disallowed.[16] *In re UNR*, 725 F.2d at 1118. The Seventh Circuit further expressed the opinion that:

> ... The judicial process will benefit from waiting for an actual claim to be filed ... This will create a more informative context for deciding whether the interests of potential victims of asbestosis can be dealt with—whether one-by-one or in gross—in this bankruptcy proceeding.

*Id.*

UNR anticipated that it would file objections to any claims filed by putative claimants. However, this strategy presented a new problem. Putative claimants, unless solicited, do not file claims in asbestos-related Chapter 11 cases. Various reasons have been suggested for this occurrence.[17] Confronted with this reality, UNR actively sought out two putative claimants, Mr. Alban and Mr. Anderson, and encouraged them to file claims. It then objected to both claims.[18] The Court believes that UNR's actions in seeking out the Alban and Anderson claims and then objecting to them have been largely guided by the observations made by the Seventh Circuit in this case.

## III. THE ANDERSON AND ALBAN CLAIMS—FACTS AND PRESENT PROCEDURAL POSTURE

Thomas E. Anderson now resides in Turlock, California. Charles L. Alban now lives in Honolulu, Hawaii.

Both men were formerly in the United States Navy and were stationed in the Pearl Harbor Naval Shipyard in Honolulu, Hawaii. During their Naval service, both men were allegedly exposed to asbestos

---

15. The Manville case does offer considerable hope in this regard. If the Bankruptcy Court's decision confirming that plan stands up on appeal, it will offer a useful model for this case. The Manville Plan was confirmed on December 18, 1986. The cornerstone of the Manville Plan is the issuance of an injunction. That injunction "channels all asbestos-related claims and obligations away from the reorganized entity and targets it toward" newly-created Trust Funds for resolution. *In re Johns-Manville Corp.*, 68 B.R. 618, 624, 3 Bankr.L.Rep. (CCH) § 71,531 at 90,183. In Manville, the claims of future claimants will not be discharged upon confirmation. The Manville Plan's viability relies solely on the effectiveness of the injunction. As for the status of future claimants in that proceeding, the Manville court has stated quite clearly that "whether these parties in interest have claims that are cognizable in a reorganization proceeding, however, is not an issue which needs to be determined in order to confirm this Plan." *Id.* at 628, 3 Bankr.L.Rep. at 90,186.

16. The Seventh Circuit also suggested that the question could be resolved by an objection to the confirmation of a plan which provided for or failed to provide for putative claimants. *In re UNR*, 725 F.2d at 1120. For its part, UNR would like to have this matter resolved prior to the confirmation of a plan. Further, UNR

would not want to leave the question to be resolved in dischargeability proceedings after confirmation.

17. One reason suggested is that when a putative claimant contacts a personal injury attorney he/she is advised not to file a claim since the statute of limitations might begin to run on his asbestos claim upon such a filing. Plaintiff's lawyers believe that a putative claimant is better off to delay taking any legal action until he/she actually gets an asbestos disease since damage awards on that claim would be substantially greater. Further, a putative claimant's rights against other solvent asbestos manufacturers would be adversely affected by premature action.

Another reason for their apparent failure to file claims is that putative claimants might not be aware of this case. Also, since they are not actually sick, putative claimants may not be sufficiently stimulated to take any action to assert their legal rights against any asbestos manufacturer, particularly one involved in a bankruptcy case.

18. As explained in further detail, *infra*, p. 475, the Court rejects any suggestion of impropriety on the part of UNR or its attorneys either in soliciting the Alban and Anderson claims or in the objecting to those same claims.

manufactured by UNR while engaged in rip-out operations aboard a Navy vessel.[19] Neither man has yet manifested any asbestos-related disease.

In connection with a lawsuit UNR has filed against the United States Government under the Tucker Act, 28 U.S.C. §§ 1346, 1491, which lawsuit is pending and awaiting trial in the Court of Claims, UNR's counsel contacted and met with Mr. Alban in Oregon, and later in Honolulu.[20] UNR's counsel was searching for witnesses who had participated in rip-out operations aboard Navy vessels. Mr. Alban shared his knowledge of these rip-out operations with UNR's counsel. Mr. Alban gave UNR's counsel documents relevant to UNR's case against the government. Mr. Alban apparently gave UNR's counsel the name of Mr. Anderson, a man who had been stationed with Mr. Alban in the Navy in Pearl Harbor and who had also taken part in asbestos rip-out operations.

UNR's counsel flew Mr. Alban to Washington, D.C. in order to assist him in filing a claim in this case. UNR's counsel informed Mr. Alban that the filing of a claim might be of benefit to him if he were to come down with any illness in the future. Mr. Alban was never advised by UNR's counsel to contact an attorney. The claim form Mr. Alban signed had been prepared by UNR's counsel.

Mr. Anderson was contacted by UNR's counsel in 1984. He met with the debtor's attorney on three occasions. At the last meeting, Mr. Anderson gave a deposition which dealt with the asbestos rip-out procedures. After the deposition, UNR's counsel suggested to Mr. Anderson that he should file a claim, since there was a possibility that funds would be available to persons who filed claims, whereas no funds would be available to him if he did not file a claim. Mr. Anderson signed and filed a claim form, although he is uncertain as to whether he or UNR's counsel actually prepared the form. UNR's counsel never suggested to Mr. Anderson that he retain his own attorney.

Mr. Anderson filed his proof of claim on January 24, 1985. Mr. Alban filed his proof of claim on February 12, 1985. On June 10, 1986, UNR filed objections to the claims of Anderson and Alban. Those objections have yet to be resolved.

■ The Legal Representative maintains that the tactics employed by UNR's counsel in obtaining the claims of Anderson and Alban were unethical and, therefore, UNR is precluded from objecting to these claims. While it might have been preferable for UNR's attorney to have suggested to Alban and Anderson the need for them to seek counsel of their own and to have refrained from giving advice to Alban and Anderson which could be construed to be legal advice, the Court does not believe that the objection is foreclosed by the methods used by UNR's counsel, particularly since the Bankruptcy Code gives debtors a statutory right to file claims on be-

---

**19.** "Rip-out operations" refers to the removal of asbestos insulating materials. From the 1930's through the 1970's, asbestos was installed throughout Navy vessels—insulating the walls, boilers, pipes and the hull of ships. Asbestos material had to be replaced on a regular basis due to the loss of its insulating properties. This task was performed by sailors, government shipyard workers and private shipyard workers, and it was an enormous and on-going task since every vessel in the Navy had to be serviced. Those people who were actively involved in the removal of asbestos like Mr. Alban and Mr. Anderson were obviously exposed to greater danger from asbestos than those who merely were exposed to it while it was being used as insulation. Asbestos dust and fibers saturate the air when worn asbestos materials are removed. Eventually, asbestos dust and fibers may find their way into the lungs of shipyard workers who were engaged in rip-out operations on an on-going basis, causing a variety of lung diseases, particularly, mesothelioma, which is a type of lung cancer, and asbestosis, which is a pneumoconiosis or progressive lung disease that results in fibrosis of the lungs, pleural thickening, pleural plaques, and shortness of breath. *See Porter v. American Optical Corp.*, 641 F.2d 1128, 1132–33 (5th Cir.1981) (which contains a detailed description of "asbestosis").

**20.** The Legal Representative has attached to his pleadings in this matter the affidavit of Thomas E. Anderson, and the affidavit of Jeffrey B. White, an attorney hired by the Legal Representative, who contacted Charles L. Alban. These affidavits set forth the manner in which UNR contacted both Anderson and Alban and for purposes of this motion, the Court accepts the representations in those affidavits.

half of creditors.[21] 11 U.S.C. § 501(c). Therefore, the ethical concerns raised by the Legal Representative are not well taken.

On September 16, 1986, the Asbestos Plaintiffs' Committee filed a motion seeking to remove another objection UNR had filed to the claims of 20 alleged asbestos victims, including Alban and Anderson, from the bankruptcy court to the district court for hearing. This objection is based on the so-called "government contract defense." Alban and Anderson are the only putative claimants among this group.[22] On September 18, 1986, the district court granted the Asbestos Plaintiffs' Committee's motion and withdrew the resolution of UNR's objections to these 20 claims from the bankruptcy court.

■ On September 16, 1986, UNR filed a motion for summary judgment on its objection to the claim of one James Martin. James Martin is an asbestos disease victim. In their motion, UNR asserts that Mr. Martin's claim should be disallowed since it is subject to the government contract defense.[23] If that defense is available in this case, UNR would be shielded from liability to those actual asbestos disease victims who had been exposed to asbestos products during the course of their military service. Obviously, the government contract defense could also be asserted against the claims of putative claimants who had such as Alban and Anderson been exposed to asbestos products while enlisted in the United States Navy.

On September 20, 1986, UNR filed a motion before the district court seeking, in part, to stay further proceedings on its objections to the Alban and Anderson claims, (and the claims of 12 other individuals). UNR requested this stay in the belief that a ruling on UNR's summary judgment motion in connection with its objection to the James Martin claim on the basis of the government contract defense might be dispositive of the objections raised by UNR to the claims of the other claimants, including Alban and Anderson. On October 16, 1986, the district court granted UNR's motion to

21. Section 501(c) provides that "if a creditor does not *timely file* a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." 11 U.S.C. § 501(c) (emphasis added). By its own terms, section 501(c) permits debtors to file claims on behalf of creditors who fail to file a timely proof of claim. The Congressional intent behind section 501(c) is clear:

> The purpose of this subsection is mainly to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case or under the plan.

House Report No. 95–595 95th Cong., 1st Sess. 351 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 61 (1978), U.S. Code Cong. & Admin. News, pp. 5787, 5847, 6307. *See, In re Behrens Enterprises, Inc.,* 33 B.R. 751 (Bankr.M.D.Pa.1983); *In re Starkey,* 49 B.R. 984 (D.Col. 1984).

Had a bar date for the filing of claims been set in these proceedings, UNR could have then filed a claim on behalf of Mr. Anderson and Mr. Alban under Section 501(c). 11 U.S.C. § 501(c). Subsequently, UNR could have objected to the claims it had filed on behalf of Mr. Anderson and Mr. Alban.

Clearly, it is proper for counsel to contact witnesses while in the course of developing a lawsuit, as was done by UNR when it contacted Alban and Anderson for the purposes of developing its suit against the United States. That UNR encouraged the actual claimants to file a claim should be of no moment in light of UNR's statutory right to file claims on behalf of delinquent or reluctant creditors. The conduct of UNR's counsel in seeking and obtaining the filing of claims by Alban and Anderson was well within the spirit of the Bankruptcy Code. Further, UNR's conduct is further justified in light of their good faith efforts to follow the observations made in dicta by the Seventh Circuit regarding the directions to be taken in this case. *In re UNR Industries, Inc.,* 725 F.2d 1111. No provision of the Code of Professional Responsibility or other rules governing professional conduct of attorneys appears to have been violated by UNR's attorneys in soliciting Alban and Anderson to file proofs of claim.

22. In fact, they are the only putative claimants who have filed claims in this case.

23. Under the government contract defense doctrine, government contractors who manufacture products according to the specifications established by the United States Government share in the immunity extended to the United States in suits brought by servicemen, or their relatives, for injuries which arise out of, or in the course of, activity incident to military service. *Tillett v. J.I. Case Company,* 756 F.2d 591, 596–97 (7th Cir.1985).

stay the hearings on its objections to those 14 claims.

■ UNR has now changed its position. UNR insists that it will restrict its objection to Mr. Alban's and Mr. Anderson's claims to the question of whether they are in fact creditors of these estates. UNR says it will not assert the government contract defense against the claims of either Alban or Anderson. UNR's waiver of the government contract defense as to these claims gives this Court little comfort in light of the fact that it is clear under the Bankruptcy Code and Rules that such a waiver would not prevent any other interested party such as the Unsecured Creditors' Committee or an individual creditor from objecting to the Alban and Anderson claims on the basis of the government contract defense. 11 U.S.C. § 502(a); Bankruptcy Rules 3007, 3008.

In any case, Messrs. Alban and Anderson have a serious problem in pursuing their claims against the UNR estate. Litigation seeking to resolve the question of whether putative claimants are creditors under the Bankruptcy Code will be very costly. By the same token, it would be very expensive for them to try to beat back the government contract defense. Neither Mr. Alban nor Mr. Anderson is wealthy. UNR recognizes that these gentlemen cannot realistically afford to pursue their claims against this debtor. UNR's suggested solution to this problem is to have the Court order the Legal Representative, Mr. Forde, who, of course, can be compensated for his efforts from the estate, to represent Mr. Alban and Mr. Anderson on the creditor status issue. If its suggestion is adopted, UNR will ask the district court to lift the stay of the resolution of its objections to the Alban and Anderson claims.

## IV. THE COURT'S JURISDICTION TO ORDER THE LEGAL REPRESENTATIVE TO REPRESENT ALBAN AND ANDERSON

■ The Asbestos Plaintiffs' Committee questions whether the bankruptcy court has jurisdiction to require Mr. Forde to represent Messrs. Alban and Anderson since the determination of the merits of the objections to their claims has been withdrawn from this Court to the district court. This argument is without merit. The district court's withdrawal of the reference of UNR's objection to the Anderson and Alban claims did not divest the bankruptcy court of its jurisdiction to provide for the orderly administration of these bankruptcy cases. The Legal Representative is a creation of this Court in the exercise of its general equitable powers under 11 U.S.C. § 105(a). See In re UNR, 725 F.2d at 1119. The scope of the Legal Representative's duties and powers were specifically defined by this Court. In re UNR, 46 B.R. at 675, 676.[24] UNR's motion to direct the Legal Representative to represent Alban and Anderson, if granted, would simply expand the scope of his duties. The expansion of the Legal Representative's duties, like his original appointment, is a matter involving the administration of this estate. As such, it is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and accordingly is a matter as to which this Court has final decision-making authority. See In re Chipwich, Inc., 54 B.R. 427 (Bankr.S.D.N.Y.1985)

That authority to control the administration of these bankruptcy cases has not been divested by the district court's withdrawal of the determination of UNR's objection to the Anderson and Alban claims from the bankruptcy court. The only effect of that removal is that the merits of that objection will be determined by the district court, not by this Court. Were this Court to order the Legal Representative to represent Mr. Alban and Mr. Anderson in the objection proceedings before the district court, that would in no way determine the merits of UNR's objection and would in no way interfere with the district court's resolution of that dispute.

The Committee misunderstands the scope and effect of the district court's removal of

---

**24.** Upon the recommendation of the United States Trustee, and after notice and a hearing, the Court approved the appointment of Mr. Forde to serve as the Legal Representative. See In re UNR, 46 B.R. at 677.

the objections to the Alban and Anderson claims to the district court for determination. The district court did not remove the bankruptcy case from this Court; it simply removed a limited class of proceedings.[25] The Chapter 11 case continues to pend in this Court where this Court continues to administer it. If the Committee's analysis were correct, the legal fees of counsel for the debtor and the Committee generated in the prosecution and defense of the objections to these claims would have to be submitted to and approved by the district court. This clearly is not the case. All fee requests of court-appointed counsel in this case have been and will be resolved by this Court alone as part of its administration of this case. For the same reasons, the determination whether the Legal Representative should be directed to represent Alban and Anderson has not been withdrawn by the district court and remains before this Court for decision.

## V. SHOULD THE LEGAL REPRESENTATIVE REPRESENT ALBAN AND ANDERSON

### A. *Can This Court Order Mr. Forde to Represent Alban and Anderson?*

■ The Legal Representative contends that the February 28, 1985 Order authorizing him to exercise the powers of a committee under 11 U.S.C. § 1103 prohibits him from representing individual claimants. Section 1103(b) as it read prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333 (1984) applies in this case.[26] That version of Section 1103(b) provides:

A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

11 U.S.C. § 1103(b) (1983).

The legislative history of pre–1984 Section 1103(b) makes it clear that the prohibition

against committee attorneys representing individual claimants is intentional.

In order to discourage the practices surrounding election of creditors' committees today and to avoid a serious potential for conflict of interest, the bill requires that counsel to the creditors' committee cease any representation of creditors in the[ir] individual capacities in connection with the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 104–05 (1977), U.S.Code Cong. & Admin. News 1978, p. 6066.

UNR takes the position that the Legal Representative is not actually a committee, but only has been given the powers of a committee by judicial fiat. In *Robinson v. Johns-Manville Corporation (In re Johns-Manville Corporation)*, 52 B.R. 940, 943 (S.D.N.Y.1985) the parties appealed an order entered by the bankruptcy court authorizing the appointment of a representative for future claimants. In that case, the parties contended that when the bankruptcy court granted the legal representative section 1103 powers of a committee, it impliedly conferred creditor status on the future claimants, and their claims could therefore be discharged by the confirmation order. The district court rejected this argument. In its review of the bankruptcy court's order, the district court noted:

The reference to § 1103 in the order is simply a convenient, short-hand description of the responsibilities of the representative. The order does not state that the representative shall *be* a committee under § 1102. ... it simply provides that the representative shall exercise like responsibility. Furthermore, the order provides that the representative's powers may be reduced or expanded by order of the court at any time during the proceedings, confirming that the bankruptcy court does not consider those powers to be dictated by statute.

*Id.* at 943.

The district court's analysis in *Manville* is applicable to this dispute. Strict applica-

---

**25.** Such withdrawal was probably required because the Alban and Anderson claims are personal injury claims. *See* 28 U.S.C. §§ 157(b)(2)(B), 157(b)(5).

**26.** The 1984 amendment to section 1103(b) became effective to cases filed 90 days after July 10, 1984, which was the date the Act was enacted. P.L. 98–353, 98 Stat. 392 (1984).

tion of section 1103(b) to this situation, as UNR points out, would be inappropriate since the Legal Representative is not in fact a committee. Instead, he has been granted the powers and responsibilities of a committee. More importantly, he has been granted those powers and has been, assigned those responsibilities by this Court. As suggested by the Manville court, this Court simply referred to section 1103 as a simple method of describing Mr. Forde's duties. This Court could have spelled out the language of section 1103 without referring to the statute, and there would be no doubt as to the fact that section 1103(b) would have no application whatsoever to this dispute. This Court can alter or amend Mr. Forde's powers and responsibilities as circumstances might dictate. Should it be necessary or appropriate for this Court to order the Legal Representative to represent Alban and Anderson, there is little doubt it can do so. *See* 11 U.S.C. § 105(a).

B. *Should the Court Order the Legal Representative to Represent Messrs. Alban and Anderson?*

That leads to the actual question now before this Court. Is it either necessary or appropriate for the Legal Representative to represent Mr. Alban and Mr. Anderson in the claims objection process? In order to determine whether such representation is either necessary or appropriate, it is essential to determine whom the Legal Representative actually represents. Only then can it be determined whether it is necessary to such representation for the Legal Representative to take on the pursuit of Mr. Alban's and Mr. Anderson's claims against UNR and whether such representation is appropriate in conflict-of-interest terms.

In this regard, the Court concludes that the Legal Representative's view of whom he represents is correct. The Legal Representative represents future claimants, *i.e.,* those people who have been exposed to asbestos, who have not yet shown any signs of asbestos-related disease, but who in fact will eventually suffer asbestos-related disease in the future as a result of their exposure to UNR's product. The reason for this conclusion is clear. It is the future claimants who need the Legal Representative's protection. The putative claimants, *i.e.,* all those who have been exposed to UNR's asbestos but have yet to get sick as a result of that exposure, will only be entitled to damages from UNR if and when they contract an asbestos-related disease. *Gideon v. Johns-Manville Sales Corporation,* 761 F.2d 1129, 1136 (5th Cir.1985); *Schweitzer,* 758 F.2d at 942. It is hard to see what claim those who were exposed to UNR's product but who never will suffer an asbestos-related injury as a result have against UNR or its assets now or at any time in the future.

■ Looking at it this way, it is not necessary for the Legal Representative to represent Alban and Anderson in order to be able to adequately represent the future claimants. Regardless of the outcome of the debtor's objection to the Alban and Anderson claims, the rights of the future claimants will be unaffected by the decision. Alban and Anderson are both putative claimants. They are not yet future claimants. Hopefully they will never become future claimants. In that event, they will never require Mr. Forde's services to protect their interests. At this point, it is not necessary to have the Legal Representative represent their potential interest in this case on an individual basis.

More importantly, it is not appropriate for the Legal Representative to represent Alban and Anderson. The conflict of interest problems are obvious. Alban and Anderson have decided to assert claims against the Chapter 11 estate. At this point in time, they are putative claimants, not future claimants. As pointed out earlier in this opinion, not all putative claimants are in fact future claimants. Many, probably most, putative claimants will never get sick as a result of their exposure to UNR's products. The Legal Representative represents only future claimants, those who will in fact develop an asbestos-related disease as a result of their exposure to the debtor's products. Alban and Anderson do not say they will get asbestosis; they say that they

may get the disease. Thus they pursue their claims as putative claimants, not as the future claimants Mr. Forde represents.

Alban and Anderson are not sick with asbestosis. Hopefully they never will get sick. If the Legal Representative is successful in establishing a significant claim for these two and other putative claimants, resources which would otherwise be available to Mr. Forde's actual clientele, i.e. those future claimants who actually do get sick in the future as a result of UNR's products, will go to some people who in fact will never suffer any ill effects as a result of their exposure to UNR's asbestos. See Schweitzer, 758 F.2d at 942. The conflict of interest this imposes on the Legal Representative is obvious.

In addition, the Legal Representative if forced to represent Alban and Anderson will find himself in an impossible position with respect to the government contract defense. Some putative claimants such as Mr. Alban and Mr. Anderson are arguably subject to the defense. Others are not. It is in the best interests of those who are not subject to the defense to have the debtor succeed in this regard in order to enhance the collectibility of their claims. It is difficult to imagine how the Legal Representative could represent Mr. Alban's and Mr. Anderson's interests without taking a position on that issue. Even if the Court could limit the Legal Representative's role to representing Mr. Alban and Mr. Anderson only on the question of whether or not they have a claim, any labors in that regard could turn out to be wasted if the debtor succeeded on the government contract defense. Thus, this motion at best is premature. It is hard to see how the debtor could agree to not assert a valid defense against Alban and Anderson (if it is valid) that it is asserting against all other claimants similarly situated. It is worth noting that even if UNR failed to assert the

government contract defense against Alban and Anderson, any other party in interest could raise the objection. See 11 U.S.C. § 502(a); Bankruptcy Rules 3007, 3008. Additionally, the Court sees little benefit to be achieved by requiring the Legal Representative to defend Mr. Alban and Mr. Anderson on the government contract defense issue. Certain asbestos disease victims are also subject to this defense. Undoubtedly, they will battle this issue to the bitter end, if it is in fact necessary to do so. Even in the absence of any conflicts of interest, the Legal Representative could provide little more in the effort to defeat the government contract defense than what is already being provided by these actual asbestos disease victims.[27]

## VI. CONCLUSION

Whether future claimants are creditors under the Bankruptcy Code remains an open question. Nothing in this opinion should be taken to suggest either that they are or are not creditors or that this question can or should be left unresolved. A Chapter 11 plan cannot be confirmed unless it is feasible. 11 U.S.C. § 1129(a)(11). Feasibility standards under the Bankruptcy Code would require the bankruptcy court to consider the rights, if any, of putative claimants and future claimants in this case. See 11 U.S.C. § 1129(a)(11); In re Johns-Manville Corporation, 3 Bankr.L.Rep. (CCH) § 71,531 at 90, 191; In re Monnier Brothers, 755 F.2d 1336, 1341 (8th Cir. 1985). It may well be that a plan which could not discharge the claims of future claimants would fail the feasibility test, despite the presence of a trust vehicle established to pay off such claims in the future. The validity of the injunction utilized in Manville will not be known for some time to come. Therefore it is obvious that a debtor like UNR would strongly

---

**27.** The U.S. Trustee has suggested that a committee of putative claimants be organized around Messrs. Alban and Anderson to pursue the interests of such claimants in this case. Such a procedure could minimize the due process problems surrounding the question of the ability of this Court to bind putative claimants and/or future claimants (all of whom are now

putative claimants) to a plan of reorganization. It also could provide a vehicle for determining whether at least putative claimants are in fact creditors for Bankruptcy Code purposes. However, no motion to appoint such a committee is before the Court at this time and any comments on the propriety of organizing such a committee would be premature.

prefer to have a binding determination that future claimants are in fact creditors so that it can know for certain that it will be able to discharge those claims in its plan and emerge from this case without the cloud of continuing products liability of unmanageable proportion hanging over its head. 11 U.S.C. §§ 1141(d)(1)(A); 11 U.S.C. § 524(a)(2). Such a reorganized debtor might well be doomed to yet another trip to bankruptcy court. Nevertheless, Alban and Anderson are not necessarily future claimants. Right now they are only putative claimants. It is doubtful their claims can be used as a vehicle for resolving the rights of future claimants in this case. In any case, the representative of the future claimants should not be forced to represent the interests of the putative claimants as well.

For the reasons stated in this opinion, UNR's motion to direct the Legal Representative, Kevin Forde, to represent Mr. Alban and Mr. Anderson, is denied.