In re UNR INDUSTRIES, INC., Unarco Industries, Inc., UNR, Inc., UNR-Rohn, Inc., (Alabama), UNR-Rohn, Inc., (Indiana), Dart, Inc., Jobal Tube Co., Inc., National Plastics, Inc., UNR Products, Inc., Leavitt Structural Tubing Co., and Folding Carrier Corporation, Debtors.

Bankruptcy Nos. 82 B 9841–82 B 9851.

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 28, 1985.

Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for debtors.

DeFrees & Fiske, Chicago, Ill., for Official Committee of Asbestos-Related plaintiffs.

Bell, Boyd & Lloyd, Chicago, Ill., for N.V.W. (USA), Inc.

## MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This cause coming on to be heard upon the Motion to Reconsider Debtors' Application For Appointment Of A Legal Representative For Unknown Putative Asbestos-Related Claimants filed by the above-entitled Debtors, represented by SCHWARTZ, COOPER, KOLB & GAYNOR, CHTD., and upon the responses thereto filed by the OFFICIAL COMMITTEE OF ASBESTOS–RELATED PLAINTIFFS, represented by DEFREES & FISKE, and by N.V.W. (USA), INC., represented by BELL, BOYD & LLOYD, and the Court, having reviewed the record in these cases and having examined the memoranda of law filed by the parties in support of their respective positions, and having afforded the parties an opportunity for hearing and being fully advised in the premises:

The Court Finds:

1. On July 29, 1982, the above-entitled Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since that date, Debtors have continued to operate their businesses and manage their properties as debtors-in-possession.

2. Prior to 1970, some of the above Debtors or their predecessor corporate entities were involved in the manufacture and sale of products containing asbestos fiber. Exposure to these products has been implicated as a cause of several forms of serious and debilitating asbestos-related disease. These asbestos-related diseases often manifest themselves after long latency periods following the victims' original exposure to asbestos fiber. Although Debtors ceased their dealings with asbestos products in the early 1970's, there were approximately 17,000 asbestos-related tort or wrongful death cases pending against them on July 29, 1982, when these bankruptcy proceedings commenced. In addition, Debtors anticipate that between 30,000 and 120,000 new asbestos-related tort and wrongful death cases may be filed against them between now and the early twenty-first century, as individuals who have already been exposed to asbestos or asbestos products begin to manifest disease symptoms.

3. The expense involved in defending the 17,000 asbestos-related tort and wrongful death suits pending against Debtors on July 29, 1982, had much to do with Debtors' institution and maintenance of these bankruptcy proceedings. The disposition of Debtors' potential liability to the 30,000 to 120,000 people who may contract asbestos disease through the early part of the next century could have a decisive impact on Debtors' ability to successfully reorganize.

4. The liquidation of the Debtors, or the failure of Debtors to make provision for its potential liability to these 30,000 to 120,000 putative asbestos disease victims in a plan

or plans of reorganization, might leave these parties without private remedy with which they, or their estates, could obtain recovery from these Debtors for their personal injuries or their wrongful death.

5. On October 19, 1982, Debtors filed in this Court an Application For Appointment Of A Legal Representative For Unknown Putative Asbestos-Related Claimants [the Application]. The purpose of this Application was to secure the appointment of an individual to represent the interests of people who had been exposed to raw asbestos or asbestos product mined, manufactured or sold by Debtors, who had not yet manifested symptoms of asbestos disease. The specific function of this representative would be (1) to assist Debtors devise a form notice of these proceedings to be sent to the presently unknown putative asbestos disease victims; (2) to estimate or liquidate the alleged claims of such potential asbestos disease victims; and (3) to negotiate a plan or plans of reorganization with respect to the interests of these potential asbestos disease victims.

6. On December 29, 1982, the United States District Court for the Northern District of Illinois, Eastern Division, acting pursuant to the motion of a party in interest, withdrew the reference of subject matter jurisdiction respecting Debtors' Application from this Court. On March 25, 1983, the United States District Court entered its Memorandum Opinion and Order, denying Debtors' Application. *In re UNR Industries, Inc.*, 29 B.R. 741 (N.D.Ill.1983).

7. Debtors sought leave to appeal from the district court's March 25, 1983, Order. On January 17, 1984, the United States Court of Appeals for the Seventh Circuit denied Debtors' application for leave to appeal. *In re UNR Industries, Inc.*, 725 F.2d 1111 (7th Cir.1984). However, in the course of its Opinion, the Court of Appeals made certain observations which are of particular relevance to the matter now before the Court.

The Seventh Circuit suggested that people who have unmanifested cases of asbestos disease to whom Debtors are potential-

ly liable, might now be entitled to file a proof of claim against Debtors' estates. 725 F.2d at 1118–19. The Seventh Circuit further suggested that even if such unmanifested asbestos disease victims do not presently possess a "claim" against these estates, within the meaning of section 101(4)(A) of title 11 of the United States Code, the equitable power of the bankruptcy court "just might be broad enough to enable the court to make provision for future asbestosis claims against [Debtors] when it approved the final plan of reorganization." 725 F.2d at 1119.

The Seventh Circuit offered no opinion respecting whether the interests of victims of unmanifested asbestos disease could be represented in these proceedings in a manner analogous to a class action. The determination of this and other questions relating to the legal status of these putative asbestos disease claimants, in the opinion of the Seventh Circuit, could better be decided once one or more such victims actually file a proof of claim in these proceedings, and request, on his own behalf, or on behalf of those who are similarly situated, the entry of the relief requested in the Application now before this Court. 725 F.2d at 1118.

8. Thirteen months have passed since the Court of Appeals entered its decision in this matter, and 31 months have passed since these bankruptcy cases commenced. No party claiming to be a victim of unmanifested asbestos disease has moved this Court for entry of an order appointing a legal representative or a committee to represent his or her interests, or the interests of those who may be similarly situated.

9. On May 18, 1984, Debtors filed a Motion to Reconsider before the United States District Court for the Northern District of Illinois, Eastern Division, requesting that Court to reexamine its March 25, 1983, ruling with reference to the legal representative issue.

10. On June 13, 1984, the district court entered an Order which provided:

The matter of the application of the debtor for reconsideration of the appointment of a legal representative is referred to the United States Bankruptcy Court for the Northern District of Illinois. As stated by the United States Court of Appeals for the Seventh Circuit, the order entered by this Court, *In Re UNR*, 29 Bankr. 741 (N.D.Ill.1983), was interlocutory and is open for reconsideration. *In the Matter of UNR Industries*, 725 F.2d 1111 (7th Cir.1984). The Court concludes that the Bankruptcy Court should be free to consider the matter in its discretion in light of the prior decisions and any circumstances which in its judgment warrant such reconsideration.

11. On June 21, 1984, this Court entered an Order granting interested parties leave to file memoranda of law respecting the legal representative Application. Memoranda were filed by Debtors, N.V.W. (USA), Inc. and by the Official Committee of Asbestos-Related Plaintiffs. The matter was then taken under advisement on these briefs.

The Court Concludes and Further Finds:

1. The Committee first suggests that from a procedural and a policy standpoint, a bankruptcy judge ought not reconsider an Order which has been entered by the United States District Court. However, the bankruptcy court is a unit of the district court. 28 U.S.C. § 151. The Court has jurisdiction to determine the matter now before it.

2. The Committee then asserts that this Court is bound by the prior decision of the United States District Court with reference to the legal representative question. However, the United States District Court referred Debtors' motion to reconsider its prior decision on the legal representative issue to this Court for adjudication, "in light of the prior decisions and any circumstances which in its judgment warrant such reconsideration." Debtors' Application for the appointment of a legal representative shall be reconsidered, in accordance with this instruction.

3. On the merits, the Committee suggests that putative asbestos disease victims are capable of representing themselves in these proceedings, and that there is no need for the Court to appoint a legal representative with reference to them. In a separate portion of its Memorandum, the Committee also reasserts its original contention, as presented to the district court, that these victims are not "creditors" of these estates and therefore are not entitled to any representation in these proceedings.

The Seventh Circuit has observed that the entitlement of the putative asbestos disease victims to file proofs of claim in these proceedings, is an "open" question. These victims might be creditors of these estates, and they might be entitled to assert claims against Debtors, as those terms are defined by sections 101(4)(A) and 101(9)(A) of the Bankruptcy Code. There may be questions, which this Opinion will leave unresolved, with reference to the subject matter jurisdiction of this Court over the interests of these victims. But this Court does possess jurisdiction over the Debtors, and might also possess equitable authority to require Debtors to make provision for these victims in their plan or plans of reorganization. *In re UNR Industries, Inc.*, 725 F.2d 1111, 1119 (7th Cir.1984). The Court concludes that the controversy regarding the legal status of the putative asbestos disease victims as "claimants" of these estates should not bar the appointment of a legal representative with reference to them.

4. Next, the Committee suggests that putative asbestos disease victims are not "parties in interest" in these proceedings, as that term is defined by section 1109(b) of the Bankruptcy Code. The Committee urges the Court to decline to follow the decision of the United States Bankruptcy Court for the Southern District of New York, which held that putative asbestos disease victims toward whom the debtor Johns-Manville companies might be liable, were parties in interest in that chapter 11 bankruptcy proceeding. *In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr.S.D.N.Y.

1984), *leave to appeal granted,* (S.D.N.Y. December 7, 1984).

■ This Court is in accord with the determination reached in the *Johns-Manville* case, that putative asbestos disease victims are parties in interest who are entitled to be heard in the chapter 11 bankruptcy case of their alleged tortfeasor. 36 B.R. 743, 757. Putative asbestos disease victims have a stake in the outcome of these proceedings, which entitles them to party-in-interest status.

■ On October 23, 1984, the Official Committee of Unsecured Creditors, represented by WINSTON & STRAWN, filed a motion to convert the chapter 11 case of Debtor UNR Industries, Inc. (Debtors' parent corporation) to a case under chapter 7 of the Bankruptcy Code. Without predicting the outcome of this litigation, the Court observes that the resolution of this conversion motion would have far-reaching effects on the interests of Debtors, its creditors, and its equity security holders. The motion, if allowed, might extinguish any effective private remedy which victims of unmanifested asbestos disease, or their estates, might assert against the Debtors. These victims, in equity, should be heard on the motion to convert, and the provisions of the Bankruptcy Code are flexible enough to permit this Court to provide these victims with a means to be heard. Section 1109(b) of the Bankruptcy Code is not restrictive in its enumeration of the parties who may be recognized as parties in interest in a chapter 11 bankruptcy proceeding. *See* 5 L. King, *Collier on Bankruptcy* ¶ 1109.02[3] (15th ed. 1984). Under all the unique circumstances of this case, the Court holds that putative asbestos disease victims toward whom Debtors may be liable are parties in interest in these proceedings.

5. The Committee further suggests that the Bankruptcy Reform Act of 1978 was not designed to address the complex problems posed by mass toxic tort disasters, such as Debtors' current difficulty with its potential asbestos-related tort liability. The Committee urges the Court to exercise judicial restraint with reference to the legal representative question, and refrain from fashioning a remedy through its equitable power, which is not specifically provided for in the Bankruptcy Code.

■ This Court is charged with the responsibility of applying the Bankruptcy Code under which Debtors are attempting to reorganize, while endeavoring to insure that parties in interest receive fair and equitable treatment of their claims and interests. The equity power of the Court, which derives from section 105(a) of the Bankruptcy Code, permits this Court to afford fair and equitable treatment to parties "in countless situations in which the [bankruptcy] judge is required to deal with particular, individualized problems." *See Butner v. United States,* 440 U.S. 48, 55–56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In this unique case, with its unique circumstances, it is necessary for the Court to exercise its equitable authority to fashion some kind of procedural relief for these putative asbestos disease victims.

■ 6. Thirteen months have passed since the Seventh Circuit issued its opinion with reference to this matter, and putative asbestos disease victims are not representing themselves in these proceedings. Their interests herein are not adequately represented by the Debtors or by the official committees of unsecured creditors. The litigation in these cases has reached an advanced stage, particularly in reference to the pending motion to convert filed against Debtor UNR Industries, Inc. These circumstances warrant the appointment of a Legal Representative for these putative victims of asbestos disease, who can work toward the involvement of these putative victims in these proceedings, and who can act as *amicus curiae* regarding matters of vital and immediate importance to these people.

7. The primary task of this Legal Representative will be to advise putative asbestos disease victims of the pendency of and their interest in these bankruptcy proceedings. The Legal Representative may also be heard with reference to any plan or

plans of reorganization proposed by Debtors or other interested parties, and may also be heard respecting any motion to convert filed by or against the above Debtors. The Legal Representative shall seek leave of Court prior to becoming involved in any other litigation within this cause. Within the restrictions noted above, the Legal Representative shall exercise the powers and responsibilities of an official creditors' committee as set forth in section 1103 of the Bankruptcy Code. 11 U.S.C. § 1103.

8. The United States Trustee is granted leave to suggest a disinterested party to serve as Legal Representative for putative asbestos disease victims, within 20 days of the effective date of this Order. The Court shall rule upon the qualification of the candidate selected by the United States Trustee, after notice and hearing. Should the United States Trustee decline to suggest a candidate for this position the Court, after notice and hearing, shall entertain the suggestions of parties in interest on this matter, and shall rule on these suggestions after notice and hearing.

9. The Committee suggests that no representative could "hope to represent the diverse interests of this enormous group of people" who may be described as putative asbestos disease victims, and whose legal status might depend upon "the tort law of perhaps more than fifty jurisdictions." The Committee further suggests that Debtors ought not be permitted to impose *their* concept of proper representation on persons who are capable of representing themselves in this litigation. However, the task of the Legal Representative, as contemplated by the Court, is not as comprehensive as that requested by the above Debtors.

The determination of whether putative asbestos disease victims are creditors of these estates, or whether their interests could be represented in these proceedings in a manner analogous to a class action, or whether these parties would be entitled to vote on a plan of reorganization, or whether their claims might be discharged in this bankruptcy proceeding, are all questions which can properly be addressed *after* putative asbestos disease victims commence actual participation in these cases. *In re UNR Industries, Inc.*, 725 F.2d 1111, 1118 (7th Cir.1984). The Court's Order today is intended only to remove an economic barrier which might have hindered the involvement of putative asbestos disease victims in these cases, and to give these victims some voice regarding the ultimate fate of these Debtors which they currently do not possess. Recent case authority supports the entry of the relief set forth in this Order. *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985).

The Order does not create or abrogate the substantive rights of any party. Once putative asbestos disease victims become involved in these proceedings, nothing in today's Opinion would preclude them from seeking the appointment of an official committee to represent their interests. The Objections of the Official Creditors' Committee of Asbestos-Related Plaintiffs to the instant Application are overruled.

10. The Court predicates its action with reference to the appointment of a Legal Representative on sections 105(a), 1102(a)(2), 1109(b), 1128(b) and 1129(a) of title 11 of the United States Code. 11 U.S.C. §§ 105(a); 1102(a)(2); 1109(b); 1128(b); 1129(a).

11. This cause constitutes a core proceeding as defined by section 157 of title 28 of the United States Code.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Application of the above-entitled Debtors for the Appointment of a Legal Representative For Unknown Putative Asbestos-Related Claimants be, and the same is hereby allowed, subject to the restrictions on the scope of the responsibilities and authority of such Legal Representative set forth in this Memorandum Opinion and Order.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Objections filed by the OFFICIAL COMMITTEE OF ASBESTOS–RELATED PLAINTIFFS to Debtors' Application for the Appointment of a Legal Representative For Un-

known Putative Asbestos-Related Claimants be, and the same are hereby overruled.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the UNITED STATES TRUSTEE be, and the same is hereby granted 20 days' leave to suggest to the Court a disinterested party to serve as a Legal Representative for unknown putative asbestos disease victims, to be approved by the Court after notice and hearing, and that failing such action by the UNITED STATES TRUSTEE within the above-specified period, parties in interest may move the appointment of a disinterested party to serve as Legal Representative, which the Court shall rule upon after notice and hearing.