| | | |
|---|---|---|
| Lind–Waldock & Company<br>222 S. Riverside Plaza<br>Suite 320<br>Chicago, IL 60606 | Rubenstrunk<br>Anthony<br>FITC, Inc. | 91MIN810066<br>91JAA70287<br>91GAA72023 |

**In re JOHNS–MANVILLE CORPORATION, et al., Debtors.**

**Peter John ROBINSON, et al., Appellants,**

**v.**

**JOHNS–MANVILLE CORPORATION, et al., Debtors-Appellees.**

**No. 84 Civ. 9207(PNL).**

United States District Court, S.D. New York.

March 15, 1985.

Moses & Singer, New York City, for Asbestos Committee, appellant; Robert J. Rosenberg, Shelly Rothschild, New York City, of counsel.

Hahn & Hessen, New York City, for the Equity Sec. Holders Committee; George A. Hahn, New York City, of counsel.

Jerrold T. Doros, New York City, for Peter John Robinson; Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheller & Rosenberg, Michael L. Goldberg, Washington, D.C., of counsel.

Davis Polk & Wardwell, New York City, for Johns-Manville, appellee; Lowell Gordon Harriss, New York City, of counsel.

Anderson Russell Kill & Olick, P.C., New York City, for Keene Corp., appellee; Arthur S. Olick, New York City, of counsel.

Covington & Burling, Washington, D.C., for Armstrong World Industries and Committee of co-defendants; William H. Allen, Washington, D.C., of counsel.

Weil, Gotshal & Manges, New York City, for Owens-Illinois, Inc. and Committee of co-defendants; Ellen R. Werther, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Committee of Unsecured Creditors; John J. Jerome, John G. Gellene, New York City, of counsel.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

*Procedural History*

This bankruptcy appeal arises out of a reorganization proceeding initiated by Johns-Manville Corp. and its affiliated companies ("Manville"). On August 26, 1982, Manville filed a petition for relief under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1101 et seq. (1982). At that time, thousands of claims for illnesses caused by asbestos had already been filed against the debtor. A committee was appointed to represent the approximately 17,000 asbestos victims who had filed actions against Manville before the commencement of the bankruptcy proceedings. In October, 1983, Keene Corp., one of Manville's codefendants in the asbestos actions and a putative creditor, filed a motion for appointment of a legal representative for "future asbestos claimants." This group consists of an uncertain but large [1] number of individuals exposed by Manville to asbestos in the past and whose disease had not yet manifested itself as of the date of the petition.

On January 23, 1984, Bankruptcy Judge Lifland held that the future claimants were "parties in interest" under § 1109 and ruled, relying in part on its equitable powers under the then-existing provisions in 28 U.S.C. § 1481, 11 U.S.C. § 105(a),[2] that a

---

[1] At the time it filed its petition, Manville estimated that millions of people had been exposed to asbestos before the filing of the petition. Because of the long latency period for asbestos-related diseases, hundreds of thousands of these people may contract asbestos-related diseases in the next twenty to thirty years. See *In re Johns-Manville Corp.*, 36 B.R. 727, 729 (Bankr.S.D.N.Y. 1984) (Correlated Decision No. 1). According to a study commissioned by Manville and conducted by the Epidemiological Research Institute, from 1982 on about 45,000 suits would be filed against Manville for asbestos-related injuries, with a low estimate of 30,000 suits and an upper estimate of about 120,000 suits. See *In re Johns-Manville Corp.*, 36 B.R. at 743, 746 (Bankr.S.D. N.Y.1984) (Correlated Decision No. 2).

[2] At the time of the January 23, 1984 order, 28 U.S.C. § 148 provided that "[a] bankruptcy court shall have the powers of a court of equity, law and admiralty...." This provision was repealed by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (Enacted July 10, 1984). In addition, 11 U.S.C. § 105(a) provided, at the time of the January 23 decision, that the "bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105(a) was also amended by the 1984 Amendments to eliminate the word "bankruptcy," thus effectively vesting the equitable power in the district court.

representative should be appointed, but reserved decision on the representative's precise form and function until after a hearing. 11 U.S.C. § 1109(b). *In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr.S.D.N.Y.1984). *In dicta* Bankruptcy Judge Lifland suggested that these future interests may constitute "claims" under § 101(4) of the Code and may therefore be subject to discharge. *Id.* at 754–56 n. 5.

A hearing was held on July 26, 1984 on the duties of the representative. On August 14, 1984, Judge Lifland ordered the appointment of Leon Silverman, Esq. as a representative for the future claimants. The order defined "future claimants" as those persons who "have been exposed to asbestos or asbestos products mined, manufactured or supplied by Manville [before the August 26, 1983 Chapter 11 petition] and have manifested or will manifest disease post-petition and who are not otherwise represented in these proceedings." It provided that the legal representative was authorized "to exercise the powers and perform the duties of a Committee under Section 1103 of the Bankruptcy Code subject to the reduction or enlargement of such powers and duties by order of this court."[3]

Appeal was taken from this order by the Committee of Asbestos-Related Litigants and/or Creditors, the Committee of Equity Security Holders and Peter John Robinson, a member of the proposed class of future claimants. On December 7, 1984, Judge Carter denied a motion by appellees Keene Corp., Manville, Committee of Unsecured Creditors, and Committee of Asbestos Litigation Co-Defendants to dismiss the appeal. On March 8, 1985, an oral argument was held on the appeal in this court.

I find that the appointment of the legal representative and the specification of his powers was proper exercise of the bankruptcy court's and this court's discretion.

*Appellants' Contentions*

Initially the briefs of the appellants objected to the finding that the future claimants were parties-in-interest, as well as to the appointment of the representative.

At that time, two other courts in similar proceedings had denied applications to appoint representatives for future claimants, holding that these individuals had no cognizable claims and were not creditors whose claims could be discharged or affected in a reorganization plan. See *In re UNR Industries, Inc.*, 29 B.R. 741 (N.D.Ill.1983), *appeal dismissed*, 725 F.2d 111 (7th Cir. 1984); *In re Amatex Corp.*, 30 B.R. 309 (Bankr.E.D.Pa.1983), *aff'd*, 37 B.R. 613 (E.D.Ill.1983). Appellants relied heavily on these cases in their briefs. However, shortly prior to the oral argument in this case, both decisions were reversed. See *UNR*, 46 B.R. 671 (Bankr.N.D.Ill.1985); *Amatex*, 755 F.2d 1034 (3d Cir.1985). Both the Third Circuit in *Amatex* and the bankruptcy court in *UNR* held that future claimants are "parties in interest" who deserve to be heard in the reorganization process regardless of whether they are creditors with dischargeable claims.[4]

---

**3.** Section 1103(c) of the Bankruptcy Code provides:

> A committee appointed under section 1102 of this title may—
> (1) consult with the trustee or debtor in possession concerning administration of the case;
> (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
> (3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to

any plan formulated, and collect and file with the court acceptances of a plan;
> (4) request the appointment of a trustee or examiner under section 1104 of this title, if a trustee or examiner, as the case may be, has not previously been appointed under this chapter in this case; and
> (5) perform such other services as are in the interests of those represented.

**4.** The *UNR* court also authorized the representative to exercise the powers of a committee. See *UNR*, 46 B.R. at 675. The Third Circuit in *Amatex* left the issue of the form and function of the representative to the bankruptcy court to decide. Neither court decided whether the future claims are dischargeable.

At the oral argument, appellants generally conceded that future claimants could appropriately be considered "parties in interest" under the Code as long as their rights are not subject to discharge. Nor were appellants particularly troubled by with the mere appointment of a representative. The appellants contended, however, that the provision of the August 14, 1984 order authorizing the representative to exercise the § 1103 powers of a committee, implicitly conferred creditor status on the future claimants. They argued that under § 1102 of the Code, committees are to be appointed only for "creditors" or "equity security holders." They contended that this order, especially when read in conjunction with footnote 5 and other portions of the January 23, 1984 opinion implies dischargeability of these future claims.

*Discussion*

■ I find no implication in the bankruptcy court's August 14, 1984 order that the future claimants are "creditors" whose interests are dischargeable in bankruptcy.[5] The reference to § 1103 in the order is simply a convenient, short-hand description of the responsibilities of the representative. The order does not state that the representative shall *be* a committee under § 1102; nor does it even refer to § 1102 which defines a "committee"; it simply provides that the representative shall exercise like responsibility. Furthermore, the order provides that the representative's powers may be reduced or expanded by order of the court at any time during the proceedings, confirming that the bankruptcy court does not consider those powers to be dictated by statute.

The appointment of such a representative for future claimants is in my view a wise decision. The future claimants have an important stake in the outcome of the Manville reorganization.[6] Even though they may not have cognizable claims against Manville at present, they have a right to be heard as "parties in interest" under § 1109(b) of the Code. *Accord Amatex,* 755 F.2d at 1042. Their interests may be substantially affected by the terms of a plan.

It is entirely appropriate, furthermore, that their representative be authorized to exercise such powers and duties as are listed in § 1103. These include consulting with the trustee, investigating the debtor, participating in the formulation of a plan and requesting the appointment of a trustee. Other sections of the Code explicitly grant a party in interest similar powers. For example, a party in interest has a right to be heard (§ 1109) and to file a plan (§ 1121(c)) and request an examiner be appointed to investigate the debtor (§ 1104) with certain limitations. It should also be noted that the powers described in § 1103 are nonbinding. Authorizing the representative to exercise the powers listed in § 1103 simply assures that these *future* claimants will have a meaningful opportunity to be heard and to participate.[7]

At argument, all appellees acknowledged that they did not and would not contend that the order appointing the representative carried any implications as to the status or dischargeability of the claims of the future claimants. It is with that understanding that the order is affirmed.

■ Finally, one objection raised by appellants is to the compensation of the rep-

5. The Seventh Circuit has also recognized that parties cannot appeal solely from a possible implication of a decision. See *UNR,* 725 F.2d at 1116. (A party "cannot appeal from the implications of what a judge does as distinct from the actual order he enters.")

6. The appellants conceded during oral argument that the impact of the future claims will be an important consideration in determining the "feasibility" of any proposed plan. Under § 1129(a)(11) of the Bankruptcy Code, the con-

firmation of a plan requires a finding that the proposed plan "is not likely" to lead to "liquidation, or further reorganization, of the debtor."

7. *Some of the powers or duties listed in § 1103, such as the duty to "collect and file with the court acceptances of a plan" may be inconsistent with the notion that future claimants may not be creditors with dischargeable claims. To the extent these duties are inconsistent with the proper definition of the future claimants, they can be ignored.*

resentative out of estate funds. The importance of the future claimants to this reorganization is undeniable, regardless of their status or dischargeability. Given the great importance of having their position adequately represented (and in view of the vastness of the estate), it is wholly appropriate to provide for such compensation.

The August 14, 1984 order is affirmed.