### In re G–I HOLDINGS, INC., et al, Debtors.

### No. 01–30135(RG).

United States Bankruptcy Court, D. New Jersey.

May 8, 2003.

Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., by Sonya M. Longo, Esq., Short Hills, NJ, Keating, Muething & Klekamp, P.L.L., by Michael L. Scheier, Esq., Kevin E. Irwin, Esq., Cincinnati, OH, Co–Counsel for C. Judson Hamlin, the Legal Representative of Present and Future Holders of Asbestos–Related Demands.

Lowenstein, Sandler, P.C., by Jeffrey D. Prol, Esq., Roseland, NJ, Caplin & Drysdale, Chartered, by Trevor W. Swett, III, Esq., Washington, DC, Co–Counsel for the Official Committee of Asbestos Claimants.

Riker, Danzig, Scherer, Hyland, & Perretti, LLP, by Dennis J. O'Grady, Esq., Morristown, NJ, Weil, Gotshal & Manges, LLP, by Deryck A. Palmer Esq., Kathryn L. Turner Esq., New York City, Co–Counsel for the Debtor, G–I Holdings, Inc.

Duane, Morris & Heckscher, LLP, by Joseph H. Lemkin, Esq., Newark, NJ, for the Bank of New York.

## OPINION

ROSEMARY GAMBARDELLA, Chief Judge.

### MATTER BEFORE THE COURT

Before the Court is a motion by C. Judson Hamlin, the Legal Representative of Present and Future Holders of Asbestos–Related Demands ("Legal Representative"), supported by the Official Committee of Asbestos Claimants ("Committee"), for authority to seek intervention as co-plaintiff in the Committee's suit against the debtor's principal stockholder Samuel Heyman.[1] The suit, captioned *Official Committee of Asbestos Claimants of G–I Holdings, Inc., suing on behalf of the Chapter 11 Bankruptcy Estate of G–I Holdings, Inc., f/k/a/ GAF Corporation v. Samuel Heyman,* Action No. 01 Civ. 8539(RWS) ("Avoidance Action"), is currently pending before United States District Judge Robert W. Sweet in the United States District Court for the Southern District of New York.[2] A hearing on the motion was conducted on June 12, 2002 at which time the Court reserved decision. The following constitutes this Court's findings of fact and conclusions of law. For the reasons set forth below, the Legal Representative's Motion is granted.

### FACTS AND PROCEDURAL HISTORY

On January 5, 2001, G–I Holdings ("G–I" or "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court. On August 3, 2001, ACI, Inc., a subsidiary of G–I, filed a voluntary case under Chapter 11 of the Bankruptcy Code. This Court entered an order directing the joint administration of G–I and ACI's Chapter 11 cases on October 10, 2001. Presently, G–I operates its businesses as a debtor-in-possession pursuant to 11 U.S.C. § 1107 and § 1108. On January 22, 2001, the Office of the United States Trustee appointed an Official Committee of Asbestos Claimants. On May 14, 2001 this Court, on motion of the Committee authorized it to pursue an avoidance action against the debtor's principal stockholder, Samuel Heyman. The

---

1. In light of the Third Circuit's decision in *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics)* 304 F.3d 316 (3d Cir.2002) *(Cybergenics II),* see footnote 5 infra, since vacated, the Legal Representative modified the relief sought in the pending motion as follows: "Though entitled to intervene as of right, the Legal Representative may not do so as a 'co-representative of the estate' wielding the debtor in possession's Code § 544(b) 'strong arm' power, as suggested in the Motion for Authority. But as noted above, this does not detract from the unconditional right of a party in interest to intervene that has survived *Cybergenics II,* and which the Second Circuit recently recognized in the *Caldor* case [*In re Caldor Corp.,* 303 F.3d 161, 176 (2d Cir. 2002)]. Accordingly, the fact that the Legal Representative can no longer serve as a representative of the estate does not alter the conclusion that intervention as of right is warranted under existing law." (Legal Representative's Brief Addressing the Impact of *Cybergenics* at p. 5.) The Third Circuit subsequently vacated *Cybergenics II* and granted a rehearing *en banc, Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 310 F.3d 785 (3d Cir.2002). Thereafter, the Legal Representative's modification to the relief requested in the motion was withdrawn (Legal Representative's Supplemental Submission Regarding *Cybergenics* at p. 2).

2. The complaint alleges that on January 1, 1997, GAF, a predecessor to the Debtor, effected a fraudulent transfer of its interest in International Specialty Products, Inc. ("ISP") to GAF shareholders, that the value of the interest transferred at the time of transfer was approximately $988 million and that the transfer was gratuitous. The Committee asks that the district court avoid the transfer of ISP stock under 11 U.S.C. §§ 544(b), 550(a) and the New York Fraudulent Conveyance Act, and award it various monetary damages.

order granted the Committee authority to prosecute any causes of action the Debtor may have "against Samuel Heyman and his affiliates arising out of the transfer of stock of International Specialty Products ('ISP') and/or ISP Holding, Inc., including any claims or causes of action pursuant to Section 544(b) of the Bankruptcy Code." *See* Order dated May 14, 2001, p. 2.

On May 29, 2001, the Debtor filed an application for the appointment of a legal representative for the present and future holders of asbestos-related demands.[3] By order dated September 6, 2001, the court granted the Debtor's application, and the parties conferred regarding appropriate candidates. On September 20, 2001, the Committee commenced the Avoidance Action, which is the subject of the instant motion. By order dated October 10, 2001, this Court appointed C. Judson Hamlin to be the legal representative of present and future holders of asbestos related demands.

The "Legal Representative's Memorandum in Support of Motion For Authority To Seek Intervention As Co–Plaintiff In The ISP Avoidance Action Against Samuel Heyman" ("Legal Representative's Motion") was filed on May 13, 2002. Debtor's objection, entitled, "Objection of G–1 Holdings Inc. to Motion of Legal Representative of Present and Future Persons Holding Asbestos Demands for Authority to Seek Intervention as Co–Plaintiff in the ISP Avoidance Action Against Samuel Heyman" ("Debtor's Objection") and the Committee's "Response of The Official Committee of Asbestos Claimants in Support of Legal Representative's Motion for Authority to Seek Intervention as Co–Plaintiff in Avoidance Action Against Samuel Heyman" ("Committee's Response") were filed on June 5, 2002. The Legal Representative filed a reply on June 10, 2002, entitled, "Legal Representative's Reply Brief Relating to Motion for Authority to Seek Intervention in ISP Avoidance Action" ("Legal Representative's Reply").

The Court conducted a hearing on the motion on June 12, 2002 and reserved decision. The Debtor filed its "Reply in Further Support of Objection of G–1 Holdings Inc. to Motion of Legal Representative of Present and Future Persons Holding Asbestos Demands for Authority to Seek Intervention as Co–Plaintiff in the ISP Avoidance Action Against Samuel Heyman" ("Debtor's Reply") on July 3, 2002. On July 5, 2002, the Legal Representative filed a "Supplemental Brief of Legal Representative in Response to Debtor's 'Reply' in Further Support of its Objection to Legal Representative's Motion for Authority" ("Legal Representative's Reply II").

## DISCUSSION

■ Many of the arguments among the Debtor, the Legal Representative and the Committee presented before this Court concern the procedural and substantive issues of intervention which may arise in motion practice in the Avoidance Action before the District Court. This Court will not opine on such issues. This opinion, therefore, is limited in scope to determining whether this Court should grant the Legal Representative authority to move to intervene in the Avoidance Action pending

**3.** The Debtor has stated that it moved for the appointment of the Legal Representative to ensure that the Legal Representative would be able to participate in a pending declaratory judgment action that seeks to bind future claimants. In that action, the Debtor seeks a determination that Building Materials Corpo- ration of America (BMCA), G–I's subsidiary, is not liable for asbestos claims under theories of alter ego and successor liability. BMCA is a leading manufacturer of residential commercial roofing products. Debtor's Reply at 3.

before the United States District Court for the Southern District of New York.

## A. Jurisdiction and Venue.

Jurisdiction and venue are not contested in the case at bar. Accordingly, this Court has jurisdiction over the Legal Representative's Motion under 28 U.S.C. § 1334. *See* 28 U.S.C. § 1334 (2002). This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). *See* 28 U.S.C. § 157. Moreover, venue of this case is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409. *See* 28 U.S.C. §§ 1408 and 1409 (2002).

## B. The Legal Representative.

Appointment of the legal representative is not at issue in the case at bar. This Court, on application of the Debtor and exercising its powers under sections 105(a) and 524(g) of the Bankruptcy Code ("Code"), issued an Order appointing C. Judson Hamlin the Legal Representative on October 10, 2001, and empowered the Legal Representative with "standing as a party in interest to be heard on every matter relevant to the interests of Demand Holders in G–1's chapter 11 case, including but not limited to, adversary proceedings, contested matters, and matters involving section 524(g)." *See* Order, dated October 10, 2001, at 2.

### 1. U.S.C. § 524(g)

■ Section 524(g), contains provisions for "channelling [sic] injunctions" in a limited class of chapter 11 cases involving asbestos claims. 4 KING, COLLIER ON BANKRUPTCY § 524.07[1] & [2] at 524–41 to 44 (15th ed. Rev.2002). The section was modeled on the injunction entered in *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988), against future suits involving the debtor for asbestos-related claims. *Id.*; *see also In re Johns–Manville Corp.*, 36 B.R. 743 (Bankr.S.D.N.Y.1984), *aff'd* 52 B.R. 940 (S.D.N.Y.1985); *In re UNR Industries, Inc.*, 46 B.R. 671 (Bankr.N.D.Ill. 1985). The section establishes conditions under which assets of the corporation may be set aside in a trust to settle present and future claims and under which the court may enjoin future asbestos claim holders from suing the emerging debtor. *Id.*

In the case at bar, the Debtor argues that § 524(g)[4] contemplates intervention of the Legal Representative on plan issues only. *See* Debtor's Objection, pp. 10–12. Debtor argues that the *Johns–Manville* and *UNR* cases, upon which § 524(g) was modeled, only involved the legal representative in plan aspects of the case. *Id.*

---

**4.** Section 524(g)(4)(B) provides in pertinent part:

> (B) Subject to subsection (h), if, under a plan of reorganization, a kind of demand described in such plan is to be paid in whole or in part by a trust described in paragraph (2)(B)(I) in connection with which an *injunction described in* paragraph (1) is to be implemented, then such injunction shall be valid and enforceable with respect to a demand of such kind made, after such plan is confirmed, against the debtor or debtors involved, or against a third party described in subparagraph (A)(ii), if–
>
> (i) as part of the proceedings leading to issuance of such injunction, the court appoints a legal representative for the purpose of protecting the rights of persons that *might subsequently assert demands of such* kind, and,
>
> (ii) the court determines, before entering the order confirming such plan, that identifying such debtor or debtors, or such third party (by name or as part of an *identifiable* group), in such injunction with respect to such demands for purposes of this subparagraph is fair and equitable with respect to the persons that *might subsequently assert* such demands in light of *the benefits* provided, or to be provided, to such trust on behalf of such debtor or debtors or such third party.

Debtor also posits that if Congress intended that a legal representative have broader involvement, Congress would have required the courts to appoint the legal representative at the outset of the bankruptcy case. *Id.* The Debtor notes that the sole reference in § 524(g) to the legal representative appears in that section of the statute that concerns plan confirmation, and argues that this placement indicates that the Legal Representative should be involved exclusively with plan formation and distribution, and not with recovering estate assets. *See* § 524(g)(4)(B)(i).

Debtor's arguments are not persuasive. Although the courts in *Johns–Manville* and *UNR* directed that the legal representative be involved in plan-related aspects of the case, they did not bar the legal representative from seeking involvement in other issues. On the contrary, both courts specified that if the legal representative wanted involvement in additional aspects of the case, it would require authority from the court. *See, e.g., In re Johns–Manville Corp.*, 36 B.R. 743, 759 (Bankr. S.D.N.Y.1984), *aff'd* 52 B.R. 940, 942–43 (S.D.N.Y.1985); *and In re UNR Indus.*, 46 B.R. 671, 675 (Bankr.N.D.Ill.1985). The Legal Representative asserts that he represents potentially, the largest asbestos related personal injury constituency in this case. While the Court agrees with the Debtor that determination of this assertion is premature at this time, the financial interest of the future claim holders is apparent.

Nothing in the plain language or the legislative history of § 524(g) suggests that Congress intended to limit the role of the legal representative. *See* H.R.Rep. No. 103–835, at 40–41 (1994), U.S.Code Cong. & Admin.News 1994, pp. 3340, 3349; 140 Cong. Rec. H10, 765–766 (Oct. 4, 1994). The House Committee commented that the JohnsManville "special representative was centrally involved in formulating the plan and negotiating support for it among other creditors[,] . . . [the House] Committee remain[ed] concerned that full consideration be accorded to the interests of future claimants, who, by definition, [did] not have their own voice." *Id.* Also, section 524(g) references the appointment of a legal representative as a condition of issuing a channeling injunction. 11 U.S.C. § 524 (2002). Therefore, we will not interpret the House Committee's comments as limiting the legal representative's role to plan formation issues only. Moreover, limiting the role of a legal representative is inappropriate because the facts of different cases may require that a legal representative have a different one.

*2. 11 U.S.C. § 544.*

Title 11, United States Code, Section 544(b), provides in pertinent part:

> „, [t]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title. 11 U.S.C. § 544 (2002).

Debtor argues that because only the trustee may bring an action to avoid a transfer of an interest in property, the Legal Representative is precluded from intervening. *See* Debtor's Reply, p. 9, citing *Hartford Underwriters Insur. Co. v. Union Planters Bank (In re Hen House)*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). Courts have empowered legal representatives where necessary. *See, e.g., In re Johns–Manville*, 36 B.R. 743 (Bankr. S.D.N.Y.1984), *aff'd* 52 B.R. 940 (S.D.N.Y. 1985) (authorizing the legal representative to exercise the powers of a creditors' committee, as future claimants had right to be

heard as parties in interest even though they did not have cognizable claims against debtor at that present time); *see also, In re UNR Industries,* 46 B.R. 671, 675–676 (Bankr.N.D.Ill.1985). Debtor also argues that the Legal Representative cannot pursue the Action as co-plaintiff because he represents no unsecured claimholder in the Debtor's Chapter 11 case. *See* Debtor's Objection, p. 7.

"The avoidance power provided in § 544(b) is distinct from others because a trustee or debtor in possession can use this power only if there is an unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action." *In re Cybergenics,* 226 F.3d 237, 243 (3d Cir.2000) (comparing section 548 which is not contingent upon the identification of an actual unsecured creditor with a state law cause of action).[5] In the case at bar, the Committee clearly represents unsecured claim holders and has already commenced the Avoidance Action. Similarly, the Legal Representative asserts that he represents, potentially, the largest group of unsecured claim holders. Thus, the pivotal question here is whether this Court should grant the Legal Representative authority to make a motion to intervene in the Avoidance Action. This determination hinges on whether the Legal Representative is a "party in interest."

*3. 11 U.S.C. § 1109.*

Title 11, United States Code, Section 1109(b), provides in pertinent part, "[a]

party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109 (West 2002). In *Hartford Underwriters Insur. Co. v. Union Planters Bank, N.A. (In re Hen House),* 530 U.S. 1, 8–9, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), the Supreme Court, addressing the issue of whether an administrative claimant could seek to surcharge a secured creditor's collateral under section 506(c) of the Code, held that § 1109 cannot expand a creditor's right to pursue claims when the Code specifies who may bring the specific action. The Debtor cites *Hen House* and argues that in the instant matter, § 1109 may not be applied to allow the Legal Representative to intervene in the § 544(b) action only a trustee can bring. *See* Debtor's Reply, pp. 9–10. The Debtor urges that the Committee brought the action on behalf of the Debtor's estate and that because section 544(b) limits the ability to bring avoidance actions to a Trustee (or debtor-in-possession), the Legal Representative is not entitled to intervene in the Avoidance Action on behalf of the Debtor's estate. *Id.* However, the Supreme Court, in footnote 5, suggested that other interested parties might pursue action there under § 506(c):

> We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c). Amici

**5.** The Third Circuit held that only a trustee or debtor-in-possession can invoke § 544(b) to prosecute a fraudulent transfer action and that a court may not authorize a creditor or creditors' committee to bring suit under § 544 derivatively in *Official Committee of Unsecured Creditors v. Chinery, et al. (In re Cybergenics),* 304 F.3d 316 (3d Cir.2002) ("*Cybergenics II*"). In light of the *Cybergenics II* decision, the Debtor, Legal Representa-

tive and Official Committee of Asbestos Claimants all submitted supplemental memoranda regarding the impact of the *Cybergenics II* decision on this motion. Subsequently, the Third Circuit vacated the decision in *Cybergenics II* and granted a rehearing *en banc, In re Cybergenics,* 310 F.3d 785 (3d Cir.2002). The matter is pending before the Third Circuit. Accordingly, this Court will not seek to conjecture on *Cybergenics II.*

American Insurance Association and National Union Fire Insurance Co. draw our attention to the practice of some courts of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, *see* 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee. *See, e.g., In re Gibson Group, Inc.,* 66 F.3d 1436, 1438 (6th Cir.1995). Whatever the validity of that practice, it has no analogous application here, since petitioner did not ask the trustee to pursue payment under § 506(c) and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead. Petitioner asserted an independent right to use § 506(c), which is what we reject today. *Cf. In re Xonics Photochemical, Inc.,* 841 F.2d 198, 202–203 (7th Cir.1988) (holding that creditor had no right to bring avoidance action independently, but noting that it might have been able to seek to bring derivative suit) (emphasis added). *Hen House,* 530 U.S. at 13, 120 S.Ct. 1942.

Here, unlike the administrative claimant in *Hen House,* the Legal Representative does not seek to assert an independent right against a secured claimant. The Legal Representative seeks authority to move to intervene in a derivative § 544(b) action commenced by the Committee. The United States Trustee appointed the Committee pursuant to 11 U.S.C. § 1102(a), and the Committee in the Avoidance Action acts in the Trustee's (or debtor-in-possession's) stead.[6] The Legal Representative here also seeks authority to move to intervene in the Avoidance Action with the Court's permission.

The genesis of asbestos bankruptcy cases further illuminates who is a "party in interest." In *In re Amatex Corp.,* 755 F.2d 1034 (3d Cir.1985), decided before Congress enacted section 524(g), the bankruptcy court appointed a committee to represent plaintiffs holding asbestos related claims against the debtor. The debtor then sought the appointment of a guardian ad litem to "represent the future asbestos claimants on all issues before the court, including the question whether such latent claims could be provided for in the debtor's plan of reorganization." The creditors' committee objected to the appointment of such a representative. *Id.* at 1036. The Third Circuit in *Amatex* did not reach the issue of whether future claimants were "creditors" who held "claims" under the Bankruptcy Code. Nonetheless, the court recognized that "such individuals clearly have a practical stake in the outcome of the proceedings." *Id.* at 1041–43. The court explained that § 1109(b) must be construed broadly so that parties affected by chapter 11 proceedings may be heard. *Id.* Therefore, "courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *Id.* The court quoted with approval Judge Lifland's view in *Johns–Manville* that § 1109(b) is:

> certainly broad enough to embrace the interests of future claimants as affected parties. Future claimants are undeniable parties in interest to these reorganization proceedings pursuant to the broad, flexible definition of that term.... The drafting of "parties in interest" as an elastic concept was designed for just this kind of situation.... We conclude that future claimants are sufficiently affected by the reorganiza-

---

6. There is no trustee appointed in the case at bar.

tion proceedings to require some voice in them. Moreover, none of the parties currently involved in the reorganization proceedings have interests similar to those of future claimants, and therefore future claimants require their own spokesperson. *Id.* at 1042–43.

The court in *Amatex* reviewed the perspective of various parties already involved in the bankruptcy case and found that the interests of the creditors' committee, the debtor and one alleged future claimant were not aligned with the interests of the future claimants. *Id.* The court stated "[a]ccordingly, because of the adverse interests of the other parties, it would appear that future claimants require their own representative. Terming future claimants parties in interest will permit them to have a voice in the proceedings that will vitally affect their interests." *Id.* at 1043.

Debtor argues that in order to be a party in interest entitled to rights under § 1109(b), the proposed intervenor must meet the two requirements set forth in *Amatex:* (1) have a sufficient stake in the outcome of the proceeding to require representation and (2) that interest have insufficient representation in the proceeding. *See* Debtor's Objection at 4–6. Debtor, therefore, suggests that the court is required to evaluate each proposed act of intervention under this two part test.[7]

The Debtor asserts that the Committee and the Legal Representative already have a common interest in maximizing the assets of the estate so that their interests are aligned and that the Legal Representative is not a party in interest under § 1109(b) for purposes of intervening in the prosecution of the avoidance action. *Id.*

Upon review, this Court rejects the Debtor's reading of *Amatex.* *See In re Amatex Corp.,* 755 F.2d 1034 (3d Cir.1985). The court in *Amatex* addressed whether appointing a representative in the bankruptcy would protect the interests of future claimants. *Id.* It is for this question that the *Amatex* court used the aforesaid two-part test. In the case at bar, this Court already appointed the Legal Representative and empowered him as a party in interest. *See* Order dated October 10, 2001. Therefore, such an analysis under *Amatex* is unnecessary.

In *In re Marin Motor Oil,* 689 F.2d 445 (3d Cir.1982), a creditors' committee sought to intervene in two adversary proceedings commenced by the trustee in the bankruptcy court. The bankruptcy court refused intervention, but afforded the committee *amicus curiae* status "limited to the submission of briefs on all factual and legal issues raised." *Id.* at 447. The district court reversed, holding that § 1109(b)[8] was mandatory and could not be satisfied

---

7. Similarly, a number of courts have captured the language of *Amatex's* two-part test for use in party in interest analysis. See, e.g., *Unofficial Committee of Zero Coupon Noteholders v. Grand Union Co.,* 179 B.R. 56, 59 (D.Del. 1995); *In re Camden Ordnance Mfg. Co. of Arkansas, Inc.,* 245 B.R. 794, 807 (E.D.Pa. 2000); *In re Kaiser Steel Corp.,* 998 F.2d 783, 788 (10th Cir.1993); *Matter of Giggles Restaurant, Inc.,* 103 B.R. 549, 555–56 (Bankr. D.N.J.1989); *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 849 (Bankr.S.D.N.Y.1989); *In re Texaco Inc.,* 81 B.R. 820, 828 (Bankr.S.D.N.Y. 1988).

8. Bankruptcy Code § 1109 is entitled "Right to be Heard" and subsection (b) provides in pertinent part:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter. 11 U.S.C. § 1109(b).

by allowing the Committee to participate as an *amicus curiae*. *Id.* The Third Circuit held that "case" in § 1109(b) included adversary proceedings. *Id.* at 450. The Third Circuit in *Marin*, in affirming the order of the District Court granting intervention, observed that the language of § 1109 was broadly drafted and noted that for forty years, the statutory predecessor to § 1109(b), section 206 of the Bankruptcy Act, gave each creditor and stockholder the unqualified right to intervene, and nothing in the legislative history of § 1109 indicated a departure from that practice. *Id.* at 453. Finally, the court reasoned that a broad reading of § 1109(b) "comports with the usual expectation of parties in interest that they would have the right to be heard as parties in interest by the tribunal adjudicating their interests." *Id.* at 457. The Third Circuit found that 11 U.S.C. § 1109 accorded the creditors committee the right to be heard as a party in interest and the unconditional right to intervene in an adversary proceedings brought by the Trustee in a Chapter 11 case. *Id.* at 454–55; *see also, In re Joyanna Holitogs*, 21 B.R. 323 (Bankr.S.D.N.Y. 1982) (allowing a creditors committee to sue on behalf of the debtor); *but see, In re Bicoastal Corp.* 122 B.R. 771 (Bankr. M.D.Fla.1990) (differentiating the rights of parties permitted to intervene under Bankruptcy Rule 7024 and parties authorized to be heard under Section 1109).

■ The right to intervene applies beyond the main bankruptcy case, as in adversary proceedings in district court. In *Phar–Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir.1994), the pre-petition Debtor filed a lawsuit in Pennsylvania state court and after filing its bankruptcy petition in Ohio, removed the "related" proceeding to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1452(a). The

creditors committee then moved for intervention, arguing that § 1109(b) conferred an unconditional right to intervene. The Third Circuit first recognized that although *Marin* was questioned by some courts, it remained binding precedent in this Circuit. *Id.* at 1233. Turning to the issue on appeal, the Third Circuit held that "case" in § 1109(b) included related adversary proceedings which are pending before a district court and held that § 1109(b) as interpreted by *Marin* gives a creditors' committee an unconditional right to intervene in a non-core, "related to" proceeding before a federal district court. *Id.* at 1241.

■ A broad range of parties hold rights under § 1109(b). The statute states that "a party in interest" includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b). By the terms of the statute, even a *de minimis* creditor may be entitled to the rights afforded by this subsection. The appellants in *Marin* argued that a broad reading of § 1109(b) would give every creditor the right to intervene and would expose bankruptcy cases to interventions by innumerable parties. The court in *Marin*, however, did not find this troubling, and explained that "relatively few individuals would have enough interest in the outcome of an adversary proceeding to seek to intervene" and that "applicable Bankruptcy Rules and Federal Rules of Civil Procedure would afford to the bankruptcy courts sufficient means to control any confusion, disorder or expense that might result from the intervention of those parties who do seek to intervene." *In re Marin Motor Oil*, 689 F.2d at 453.

The Debtor avers that *Marin's* holding is limited to a creditors' committee and other enumerated parties as set forth in § 1109(b) and that the two-part test in

*Amatex* should apply to other parties not specifically enumerated in § 1109(b). *See* Debtor's Reply at 6. Debtor's narrow reading of § 1109 is at odds with the broad reading contained in *Marin* and *Phar-Mor*. In order to satisfy notions of due process, this Court believes that the appointment of the Legal Representative and his involvement in numerous aspects of the case are essential. *See, e.g., In re Babcock & Wilcox*, 274 B.R. 230, 233–34 (Bankr. E.D.La.2002) (future claimants' representative, with debtor's consent, granted intervention to co-prosecute § 544(b) action together with the official committee of asbestos claimants); *see also, In re W.R. Grace & Co., et al*, Case No. 01–1139, Order dated March 12, 2002 (D.Del., Wolin, J.) (order on consent granting joint motion to prosecute fraudulent transfer claims by the Asbestos Property Damage Claimants Committee and the Personal Injury Claimants Committee).

### 4. The October 10, 2001 Order

■ The contours of a legal representative's power, however, are not determined exclusively by the status of his constituency. Courts have employed § 105(a) as an additional basis for the involvement of a legal representative. *See, e.g., Johns–Manville*, 36 B.R. 743, 757 (Bankr. S.D.N.Y.1984) *aff'd* 52 B.R. 940 (S.D.N.Y. 1985). Presumably, even if § 105(a) is not

needed as a statutory basis for such appointment, this equitable provision may be used to shape the powers of a legal representative. *See Johns–Manville* 36 B.R. at 759 (reserving decision for future hearings on the precise definitions of legal representative's power); *see also, UNR Indus.*, 46 B.R. 671, 675 (Bankr.N.D.Ill.1985) (defining primary duty of legal representative to advise constituency; secondarily: to be heard on plan issues; but leave is required for involvement in litigation). As such, this Court's order appointing the Legal Representative serves as a potential source to broaden or constrain his ability to act in this bankruptcy case. Because the parties have differing interpretations of this Court's Order dated October 10, 2001, this Opinion will seek to clarify it.[9]

The Order provides in relevant part that the Legal Representative "is empowered and has standing as a party in interest to be heard on every matter relevant to the interests of the demand holders in G–I's chapter 11 case including, but not limited to, adversary proceedings, contested matters, and matters involving section 524(g)." *See,* Order dated October 10, 2001, at 2. The premise that the Avoidance Action at issue is "relevant to the interests of the demand holders" is not disputed. The Order, however, also contains a proviso stating "this Order is without prejudice to the

---

9. The full decretal text of the Order provides: it is hereby Ordered that C. Judson Hamlin is appointed the Asbestos Demands Representative in the G–I Holdings, Inc., chapter 11 case; and it is further Ordered that the Asbestos Demands Representative is empowered and has standing as a party in interest to be heard on every matter relevant to the interests of the demand holders in G–I's chapter 11 case including, but not limited to, adversary proceedings, contested matters, and matters involving section 524(g); and it is further Ordered that this order is without prejudice to the Court's power, *sua sponte*, or on request, to expend [sic] or contract the powers

of the Asbestos Demands Representative and to appoint additional representatives; and it is further Ordered that this Order is without prejudice to the position of any party in interest with respect to the proper role and duties of the Asbestos Demands Representative in any particular proceeding or matter other than standing to be heard; and it is further Ordered that the Asbestos Demands Representative shall be compensated in accordance with the same laws and procedures applicable under Bankruptcy Code sections 330 and 331, and any requests to retain professionals shall be considered on a case by case basis.

position of any party in interest with respect to the proper role and duties of the [Legal Representative] in any particular proceeding or matter other than standing to be heard." *Id.*

It is appropriate to examine the language of the Order in the context of the governing case law in this jurisdiction. This Court specifically empowered the Legal Representative with "standing as a party in interest to be heard," tracking the language of § 1109(b). Based on this paragraph of the Order, the Legal Representative retains his full complement of power as a party in interest as prescribed under *Marin. See In re Marin Motor Oil,* 689 F.2d 445 (3d Cir.1982).

The Order, however, limits the Legal Representative insofar as it states that the order is "without prejudice to the position of any party in interest with respect to the proper role and duties of the [Legal Representative] in any particular proceeding or matter other than standing to be heard." This provision reflects an express intent that requires the Legal Representative to seek authorization from this Court before intervening in outside litigation. This approach is consistent with the framework employed by other courts in appointing a legal representative. *See, In re UNR Indus.,* 46 B.R. at 676; *see also, In re Johns–Manville,* 36 B.R. 743, 759 (Bankr.S.D.N.Y.1984), *aff'd* 52 B.R. 940 (S.D.N.Y.1985) (weighing the various functions of the Legal Representative). We find it a proper function of the Legal Representative to seek intervention in the ISP avoidance action and accordingly will allow the Legal Representative to seek intervention in the Avoidance Action. In so doing, this Court recognizes the Legal Representative's independent judgment but reserves to this Court the authority to review his future requests. The costs of the Legal Representative's duties, as with other professionals in this case, will continue to be monitored by this Court.

### Conclusion

On the basis of the foregoing, we grant the Legal Representative's Motion for authority to seek intervention as co-plaintiff in the Avoidance Action against Samuel Heyman. It, however, is important to reiterate that under this Opinion, this Court does not rule on whether intervention under FED.R.CIV.P. 24 is appropriate, because that matter is reserved to the United States District Court for the Southern District of New York where the Avoidance Action is pending.

An Order shall be submitted in accordance with this Opinion.